ORIGINAL

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

DUBLIN DIVISION

| | |
|---|---|
| TREVOR DORSETT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 309-098 |
| | ) |
| WALT WELLS, et al., | ) |
| | ) |
| Defendants. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff has filed a complaint pursuant to Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971). As Plaintiff's complaint was filed *in forma pauperis* ("IFP"), it must be screened to protect potential defendants. Phillips v. Mashburn, 746 F.2d 782, 785 (11th Cir. 1984). Pleadings drafted by *pro se* litigants must be liberally construed, Haines v. Kerner, 404 U.S. 519, 520-21 (1972) (*per curiam*), but the Court may dismiss a complaint, or any part thereof, that is frivolous or malicious or that fails to state a claim upon which relief may be granted. 28 U.S.C. §§ 1915(e) & 1915A.

I.  **BACKGROUND**

Plaintiff originally filed this case in the United States District Court for the Northern District of Georgia, but as Plaintiff is attempting to sue employees of McRae Correctional Facility ("McRae"), located within the Southern District of Georgia, the Honorable Beverly B. Martin, United States District Judge, transferred Plaintiff's case to this Court.

However, because Plaintiff submitted his complaint without submitting a request to

proceed *in forma pauperis* ("IFP") or paying the $350.00 filing fee, the Court ordered him, pursuant to Local Rule 4.1 to either pay the $350.00 filing fee or to submit a properly completed IFP motion. (Doc. no. 4, pp. 1-2). Furthermore, although Plaintiff's original complaint had a detailed statement of facts, it was not filed on the standard complaint form used by incarcerated litigants in the Southern District of Georgia, and as such did not contain other required information. Therefore, the Court also ordered Plaintiff to re-file his complaint on the standard complaint form used by incarcerated litigants in the Southern District of Georgia. (Id. at 2). Finally, Plaintiff was cautioned that his re-submitted complaint would supersede and replace in its entirety his original filing. (Id.).

Plaintiff submitted his IFP forms and was subsequently allowed to proceed IFP. Additionally, Plaintiff submitted an amended complaint. (Doc. no. 8). Notably, the statement of claim in his amended complaint consists of five conclusory allegations and concludes with the following "(Further details will be provided when needed)." Thus, it appears that, in direct contravention to this Court's instructions that his re-submitted complaint supersede and replace in its entirety his original filing, Plaintiff intends for this Court to construe both the original document, with its detailed statement of claim, and his amended complaint jointly.

Although the Court notes that the preferred method for amending a complaint is to include all allegations in one document, Long v. Satz, 181 F.3d 1275, 1279 (11th Cir. 1999), the Court will consider Plaintiff's original document (doc. no. 1), as well as his document submitted in response to the Court's Order (doc. no. 8), as his amended complaint. Upon review of Plaintiff's amended complaint, the Court finds the following. Plaintiff names as

Defendants: 1) Walt Wells, Warden of McRae; 2) Victor Stephen Orsolites, Assistant Warden at McRae; 3) Tim Wheaton, Unit Manager of the Houston unit at McRae; 4) Tamara Jordan, Unit Manager of the segregation unit at McRae; 5) Joan Roy, a doctor at McRae; 6) Patricia Coffman, Case Manager of the Houston unit; 7) Jeanne Eckles, Counselor of the Houston unit; and 8) the Federal Bureau of Prisons ("FBOP"). (Doc. nos. 1, 8).

According to Plaintiff, he was incarcerated at Metropolitan Detention Center ("MDC") in Guaynabo, Puerto Rico, for sixty-three months prior to his incarceration at McRae. Plaintiff states that while he was at MDC, he was diagnosed with a condition affecting his spinal cord which resulted in excruciating pain and temporary paralysis. (Doc. no. 1, p. 2). Plaintiff maintains that as a result of this spinal cord condition, he was given a lower bunk profile. (Id.).

The basis of Plaintiff's current complaint is that his medical records and his lower bunk profile have not been transferred from MDC to McRae. Plaintiff argues that Defendant Roy has refused to contact MDC, and despite Plaintiff's multiple requests, has refused to schedule a medical exam. (Id. at 3). Additionally, Plaintiff indicates that he has not been given a lower bunk profile at McRae, and in fact, has been assigned to a top bunk. (Id.). Plaintiff states that when he refused Defendant Wheaton's order to use the top bunk, he (Defendant Wheaton) had Plaintiff assigned to the segregation unit. (Id.). Next, Plaintiff claims that Defendant Orsolites threatened to keep Plaintiff in segregation until his release because of Plaintiff's failure to comply with Defendant Wheaton's order. Additionally, Plaintiff alleges that because of his failure to comply with Defendant Wheaton's order, Defendants Eckles and Coffman sanctioned Plaintiff by taking away his phone privileges.

Plaintiff also complains that Defendant Jordan, the unit manager for the segregation unit, denied him access to the law library and destroyed his outgoing mail. Plaintiff states that he submitted a stamped letter, addressed to the district court (presumably in the District Court for the Northern District of Georgia), that was never received by the district court. Plaintiff believes that the mail was destroyed and not received by the district court because as of the date he submitted his complaint, he had not yet had a response from the district court. (Id.). Finally, concerning Defendant Wells, Plaintiff alleges that he (Defendant Wells) "neglected to review [his] request." (Id.). Plaintiff does not specify the exact request to which he was referring. As relief, Plaintiff requests that the Court direct MDC to forward his medical records to McRae, that he be awarded compensatory damages of one million dollars, and that he be awarded punitive damages of one million dollars.

## II. DISCUSSION

### A. FBOP

As an initial matter, the Court lacks subject matter jurisdiction over Plaintiff's claims against the FBOP because Bivens does not extend to federal agencies and because the United States is "immune to suit." Nalls v. Coleman Low Fed. Inst., 307 Fed. App'x 296, 298 (11th Cir. 2009) (citing F.D.I.C. v. Meyer, 510 U.S. 471 (1994); Bivens, 403 U.S. at 409). Accordingly, Plaintiff has failed to state a claim against the FBOP, and this Defendant should be dismissed.

### B. Individual Defendants

Plaintiff attempts to hold Defendants Wells, Wheaton, Jordan, Roy, Coffman, Eckles, and Orsolites, liable for alleged violations of his constitutional rights under Bivens.

All of these individuals are employees of McRae, a privately operated prison. Thus, the threshold issue is whether liability under Bivens may extend to the individual employees of a privately operated prison. The Eleventh Circuit has held that it does not.

In Alba v. Montford, 517 F.3d 1249, 1254 (11th Cir. 2008), the Eleventh Circuit held that prisoners in a private federal facility are not entitled to Bivens relief when adequate state remedies are available. As the Fourth Circuit explained, the fact that Defendants are employees of a private corporation should "counsel[] hesitation" in extending Bivens. Holly v. Scott, 434 F.3d 287, 291 (4th Cir. 2006). Indeed, if the purpose of Bivens is to deter federal government officials from misconduct, it would appear doubtful that Bivens should be applied to private citizens. Id. The Constitution itself is meant to circumscribe the limits of *government* action, not private action. Id. Of course, Plaintiff may argue that, in operating a private prison housing federal inmates, Defendants have become government actors. The Court, however, rejects this argument.[1] As noted by the Fourth Circuit, under the Supreme Court's decision in Richardson v. McKnight, 521 U.S. 399, 405 (1997), "the operation of prisons is not a 'public function.'" Holly, 434 F.3d at 293. As a result, it is difficult to see how Defendants' actions in connection with Plaintiff's medical care, access to the courts, and allegedly improper sanctions brought against him, at a privately operated prison can be properly considered government action. See id. at 293-94.

Furthermore, Alba provides that prisoners in a private federal facility are not entitled to Bivens relief *when adequate state remedies are available.* Alba, 517 F.3d at1254

---

[1] In Alba, the Eleventh Circuit was able to reach its decision without deciding whether the private prison is a government actor for purposes of Bivens liability. Alba, 517 F.3d at 1254.

5

(emphasis added). Concerning Plaintiff's claim against Defendant Roy, that he has been provided with substandard health care, Plaintiff has an adequate remedy *against this Defendant individually* in state court.

> Malesko indicates that a Bivens claim should not be implied unless the plaintiff has no other means of redress or unless he is seeking an otherwise nonexistent cause of action against the individual defendant. Therefore, [the Court] will not imply a Bivens cause of action for a prisoner held in a private prison facility when [the Court] conclude[s] that there exists an alternative cause of action arising under either state or federal law against the individual defendant for the harm created by the constitutional deprivation.

Peoples v. CCA Detention Centers, 422 F.3d 1090, 1103 (10th Cir. 2005); see also Holly, 434 F.3d at 295-96. "Because [Plaintiff] possesses an alternative remedy for his alleged injury, no action under [Bivens] lies." Holly, 343 F.3d at 297 (Motz, J., concurring).

Georgia clearly provides Plaintiff with a tort remedy in state court. See O.C.G.A. § 9-3-70 (explaining that "medical malpractice" includes all claims "arising out of" "[h]ealth, medical, dental, or surgical service, diagnosis, prescription, treatment, or care"). Indeed, Plaintiff possesses an "arguably superior" cause of action "under the state law of negligence." Holly, 434 F.3d at 287. Georgia law provides Plaintiff with a cause of action for negligence and medical malpractice against Defendant Roy. See, e.g., ARA Health Servs. v. Stitt, 551 S.E.2d 793, 794 (Ga. App. 2001) (former inmate brought claims of negligence and medical malpractice against doctor, prison officials, and medical services corporation). Plaintiff may also sue for punitive damages in state court. See id. In sum, Plaintiff has an adequate and effective remedy in state court against Defendant Roy.

As a result, extending liability in the instant case against Defendant Roy is not necessary either to afford Plaintiff with a remedy or to deter unconstitutional conduct.

6

Indeed, Plaintiff may possess state law claims which "an inmate in a government-run facility would not have" because they would be barred by the Federal Tort Claims Act. Holly, 434 F.3d at 287. Having concluded that Bivens may not be extended to the instant case to Defendant Roy, he should be dismissed from this action.

### C. Remaining Claims

To the extent there are no comparable state actions for the other claims raised by Plaintiff, his complaint still fails to state a claim upon which relief can be granted.

#### 1. Denial of Access to the Court

Plaintiff attempts to assert a denial of access to the court claim against Defendant Jordan. To state a viable denial of access to the courts claim in the Eleventh Circuit, Plaintiff must plead and prove actual injury to existing or contemplated litigation or nonfrivous (and therefore viable) claims challenging his sentence or conditions of confinement.[2] Lewis v. Casey, 518 U.S. 343, 349-55 (1996); see also Wilson v. Blankenship, 163 F.3d 1284, 1291 (11th Cir. 1998) (emphasizing that an inmate's right to access the courts is only implicated where there is actual injury suffered "in the pursuit of specific types of nonfrivolous cases: direct or collateral attacks on sentences and challenges to conditions of confinement."). The Eleventh Circuit has clarified the requirements for pursuing a denial of access to the courts

---

[2]There is very little distinction between Bivens and § 1983 actions as a general matter. See Smith ex. rel. Smith v. Siegelman, 322 F.3d 1290, 1297 n.15 (11th Cir. 2003)("A Bivens action is analogous to § 1983 suits against state and local officers.") In fact, for most purposes the two types of actions are synonymous; for example, the same constitutional injuries are actionable under both Bivens and § 1983, and the immunities provided federal officials in Bivens actions are coextensive with those provided state officials in § 1983 actions. Bolin v. Story, 225 F.3d 1234, 1241 (11th Cir. 2000). Thus, "as a general matter federal courts incorporate § 1983 law into Bivens actions." Id. at 1242.

7

claim as follows:

> [A] plaintiff first must show actual injury before seeking relief . . . . This essential standing requirement means that [a defendant's] actions that allegedly violate an inmate's right of access to the courts must have impeded the inmate's pursuit of a nonfrivolous, post-conviction claim or civil rights action. To prevail, a plaintiff must provide evidence of [] deterrence, such as denial or dismissal of a direct appeal, habeas petition, or civil rights case that results from actions of [a defendant].

Blankenship, 163 F.3d at 1290-91(citations omitted). Stated otherwise, there must be an allegation that the actions of a defendant acting under the color of state law "hindered . . . 'efforts to proceed with a legal claim in a criminal appeal, post conviction matter, or civil rights action seeking to vindicate basic constitutional rights.'" Id. at 1291 (quoting Sabers v. Delano, 100 F.3d 82, 84 (8th Cir. 1996) (*per curiam*)).

Although Plaintiff states that Defendant Jordan denied Plaintiff access to the courts by destroying his outgoing mail (more specifically, a letter he allegedly sent to the District Court in the Northern District of Georgia), Plaintiff fails to alleges facts which demonstrate that he had possibly viable claims that were negatively impacted by the alleged destruction of his letter. Nor does he contend that the alleged destruction of his letter resulted in dismissal of any case. As such, Plaintiff's denial of access to the courts claim should be dismissed.[3]

---

[3]The Court also notes that Plaintiff does not indicate the subject of his letter. To the extent his letter may have contained some sort of request for court action, requests for action in a letter are improper. Requests for action must be in a properly filed motion. In re Unsolicited Letters to Federal Judges, 120 F. Supp. 2d 1073, 1074 (S.D. Ga. 2000) ("[I]f a litigant seeks judicial action of any sort. . . it must be contained within a motion arising from a properly filed lawsuit."). Thus, if Plaintiff had intended to obtain some sort of relief, or for the District Court to take a specific action as a result of the letter, his letter would likely have been insufficient.

8

## 2. Defendant Wheaton

Next, Plaintiff also fails to state a claim against Defendant Wheaton for deliberate indifference to his health. Plaintiff maintains that Defendant Wheaton should not have assigned Plaintiff to a top bunk in light of his back problems and the lower bunk profile that had been issued at a different prison facility. Although it is true that "[t]he Eighth Amendment's proscription of cruel and unusual punishments prohibits prison officials from exhibiting deliberate indifference to prisoners' serious medical needs," Campbell v. Sikes, 169 F.3d 1353, 1363 (11th Cir. 1999), to support a claim for deliberate indifference to a serious medical need, Plaintiff must meet a two-prong test. First, based on an objective standard, the alleged medical problem must be "sufficiently serious"; second, the defendant must have subjectively acted with "deliberate indifference" to the inmate's health or well-being. Farmer v. Brennan, 511 U.S. 825, 834 (1994). To state the proposition differently, Eighth Amendment liability cannot be based on simple negligence or lack of due care, but rather requires some sort of conscious disregard of a serious and imminent risk. Id. at 835-39.

To show the deliberate indifference that would violate the Eighth Amendment, Plaintiff must allege that prison officials knew about and disregarded an excessive risk to his health or safety. See id. at 837. When subjectively weighing whether prison officials are deliberately indifferent, the courts require plaintiffs to show "more than mere negligence," and look for "obduracy and wantonness, not inadvertence or error in good faith." Adams v. Poag, 61 F.3d 1537, 1543 (11th Cir. 1995) (citation omitted). To state a viable Eighth Amendment claim, Plaintiff must show that the defendants acted with "deliberate

indifference" to his medical needs, such as an intentional refusal to provide care, cursory care in light of a severe medical risk, or a delay in access to care that is essentially a wanton infliction of pain. See id. at 1543-44. Only when medical care is "'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness'" will the standard of "deliberate indifference" be met. Id. at 1544 (quoting Rogers v. Evans, 792 F.2d 1052, 1058 (11th Cir. 1986)). Mere allegations of negligence or malpractice do not amount to deliberate indifference. Harris v. Thigpen, 941 F.2d 1495, 1505 (11th Cir. 1991).

Here, Plaintiff has not met the two-pronged test described above. Plaintiff alleges that he has back problems and that at a prior prison facility, he had been given a lower bunk profile. Plaintiff argues that Defendant Wheaton was deliberately indifferent to his health because he assigned him to a top bunk. (Doc. no. 1, pp. 3, 5). Notably, however, as Plaintiff recognizes, there was nothing in his medical or prison record at McRae to indicate that he had either back problems or that he had a lower bunk profile. Indeed, the basis of his claim against Defendant Roy was that his medical records did not reflect his back problems. Here, there is nothing to show that Defendant Wheaton knew about, let alone disregarded, an excessive risk to Plaintiff's health. Accordingly, Plaintiff fails to state a claim against Defendant Wheaton.

### 3. Defendants Orsolites, Coffman and Eckles

Additionally, Plaintiff has not stated a viable claim against Defendants Orsolites, Coffman, and Eckles. Plaintiff's allegations against these Defendants are that they disciplined him for his refusal to comply with Defendant Wheaton's order to use the top

bunk to which he was assigned. (Doc. no. 8, p. 5). Thus, Plaintiff acknowledges that he was disciplined for his failure to follow Defendant Wheaton's orders, not in retaliation for exercising a constitutional right. See Adams v. Jones, 784 F.2d 1077, 1082 (11th Cir. 1986) ("In a discipline case, the district court must assess whether the specific activities of a prisoner deserve classification as a protected form of expression."). In the prototypical inmate retaliation case, the inmate complains that a prison official has punished him for exercising his First Amendment right to free speech, usually by filing grievances or bringing lawsuits. See, e.g., Thomas v. Evans, 880 F.2d 1235, 1241-42 (11th Cir. 1989). It should be noted that the punitive action taken in response to the prisoner's exercise of his First Amendment rights need not amount to the violation of a "separate and distinct constitutional right" to constitute unlawful retaliation. Id. at 1242. Thus, prisoner transfers and other actions which might not alone violate a prisoner's rights become acts of constitutional magnitude when they serve as penalties for the exercise of First Amendment rights. Id.

As noted above, Plaintiff acknowledges that he was disciplined for his failure to comply with an order. Notably, Plaintiff does not argue that he received an improper disciplinary report or that he was denied due process. Thus, Plaintiff fails to state a claim upon which relief can be granted against Defendants Orsolites,[4] Coffman, and Eckles.

---

[4]To the extent Plaintiff complains about being assigned to segregation, his claim also fails. Plaintiff has not alleged that he suffered an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995)(holding that Hawaii prisoner's 30-day stay in disciplinary confinement did not violate Due Process Clause). In order to establish a due process violation, Plaintiff must bring allegations showing either that a "change in [his] conditions of confinement is so severe that it essentially exceeds the sentence imposed by the court" or that "the state has consistently given a certain benefit to prisoners (for instance, via statute or administrative policy), and the deprivation of that benefit imposes atypical and significant hardship on [Plaintiff] in relation

4. **Defendant Wells**

Finally, Plaintiff's only claim against Defendant Wells is that he (Defendant Wells) "neglected to review [his] request." (Id.). However, Plaintiff never mentions what request was neglected. (Id.). "Section 1983 requires proof of an affirmative causal connection between the actions taken by a particular person under color of state law and the constitutional deprivation." LaMarca v. Turner, 995 F.2d 1526, 1538 (11th Cir. 1993) (internal quotation marks and citations omitted). Furthermore, vague and conclusory allegations are not sufficient to state a claim. See Fullman v. Graddick, 739 F.2d 553, 556-57 (11th Cir. 1984) (noting that vague and conclusory accusations are insufficient to state a civil rights claim).

Nowhere does Plaintiff explain how Defendant Wells's alleged wrongdoing (his refusal to review an unspecified request) contributed to any of Plaintiff's claims. Thus, in the absence of an allegation of any connection between any actions of Defendant Wells with any alleged unconstitutional deprivation, Plaintiff fails to state a claim for relief against this

---

to the ordinary incidents of prison life." Bass v. Perrin, 170 F.3d 1312, 1318 (11th Cir. 1999)(citation and quotation omitted).

Here, Plaintiff does not suggest that disciplinary sanctions have resulted in a sentence exceeding that imposed by the court of conviction. Of course, it is true that the Eleventh Circuit has "assumed" that a disciplinary sanction of twelve months of solitary confinement triggers procedural due process protections under Sandin. See Williams v. Fountain, 77 F.3d 372, 374-75 (11th Cir. 1996); but see Wagner v. Hanks, 128 F.3d 1173, 1175-76 (7th Cir. 1997)(Posner, J.) ("[T]he right to litigate disciplinary confinements has become vanishingly small . . . when the entire sanction is confinement in disciplinary segregation for a period that does not exceed the remaining term of the prisoner's incarceration, it is difficult to see how after Sandin it can be made the basis of a suit complaining about a deprivation of liberty."). However, the instant case is easily distinguished from Williams because Plaintiff has not alleged that he was sanctioned for twelve months of solitary confinement. Furthermore, Plaintiff acknowledges that his stay in administrative segregation was not motivated by retaliation, but rather because he failed to comply with Defendant Wheaton's order.

Defendant. Therefore, the claims against Defendant Wells should be dismissed on that basis alone.

To the extent that Plaintiff blames Defendant Wells for the acts of his subordinates without alleging any personal involvement, his claim fails. Plaintiff simply states that Defendant Wells neglected to review his request. "It is well established in this circuit that supervisory officials are not liable under [ *Bivens* ] for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." Darymple v. Reno, 334 F.3d 991, 995 (11th Cir. 2003) (citations omitted). To hold a supervisory official or an employer liable, Plaintiff must demonstrate that either (1) the supervisor actually participated in the alleged constitutional violation, or (2) there is a causal connection between the actions of the supervisor and the alleged constitutional violation. Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotation marks and citation omitted)(citing Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990)). As noted above, Plaintiff has not alleged that Defendant Wells actually participated in the events forming the basis of any of Plaintiff's claims. Moreover, Plaintiff has not proffered any reason to support the conclusion that this Defendant violated any of Plaintiff's constitutional rights.

Similarly, Plaintiff fails to allege a "causal connection" between Defendant Wells and the asserted constitutional violations. See Zatler v. Wainwright, 802 F.2d 397, 401 (11th Cir. 1986) (*per curiam*) (requiring an affirmative causal connection between a defendant and an alleged constitutional violation). The "causal connection" can be established "when a history

of widespread abuse[5] puts the responsible supervisor [or employer] on notice of the need to correct the alleged deprivation, and he fails to do so," Brown, 906 F.2d at 671, or when "the supervisor's [or employer's] improper 'custom or policy . . . result[s] in deliberate indifference to constitutional rights.'" Hartley, 193 F.3d at 1269 (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th Cir. 1991)). A causal connection may also be shown when the facts support "an inference that the supervisor [or employer] directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003). Plaintiff has not made the necessary showing with respect to Defendant Wells. Accordingly, Plaintiff's claims against Defendant Wells on a basis of supervisory liability should be dismissed.

More importantly, however, as the Court determined that Defendants have not violated any of Plaintiff's constitutional rights concerning any of his claims, Plaintiff cannot maintain a § 1983 action for supervisory liability. Hicks v. Moore, 422 F.3d 1246, 1253 (11th Cir. 2005) (reversing of district court's denial of summary judgment, because the Eleventh Circuit concluded that plaintiff's constitutional rights were not violated, thus, plaintiff could not maintain a § 1983 action for supervisory liability against the defendant).

Thus, Plaintiff fails to state a claim upon which relief can be granted against Defendant Wells.

---

[5]The standard for demonstrating "widespread abuse" is high. In the Eleventh Circuit, "deprivations that constitute widespread abuse sufficient to notify the supervising official must be *obvious, flagrant, rampant and of continued duration*, rather than isolated occurrences." Brown, 906 F.2d at 671 (emphasis added).

### III. CONCLUSION

For the reasons stated above, the Court **REPORTS** and **RECOMMENDS** that Plaintiff's complaint be **DISMISSED** for failure to state a claim upon which relief can be granted.

SO REPORTED and RECOMMENDED this 26th day of May, 2010, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE